# EXHIBIT C

Edwards v. Wyatt, Not Reported in F.Supp.2d (2001)
2001 WL 1382503

2001 WL 1382503
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

John Joseph EDWARDS, Plaintiff,
v.
Aaron Wesley WYATT, Defendant.

No. CIV.A. 01-1333.
|
Nov. 6, 2001.

*MEMORANDUM AND ORDER*

J.M. KELLY, J.

**\*1** Presently before the Court is Motion To Dismiss Defendant's Counterclaims filed by Plaintiff, John Joseph Edwards, and a Motion For Extension Of Time In Which To Respond To Plaintiff's Motion To Dismiss Defendant's Counterclaims filed by Defendant, Aaron Wesley Wyatt. Plaintiff further filed a motion for Rule 11 sanctions to be imposed on Defendant's counsel, Ira Silverstein. In this diversity action, Plaintiff filed suit against Defendant alleging breach of contract, promissory estoppel and fraudulent misrepresentation. Defendant filed an answer and asserted counterclaims, alleging abuse of process and intentional infliction of emotional distress. For the following reasons, Defendant's Motion For Extension is denied and Plaintiff's Motion To Dismiss Defendant's Counterclaims is granted.

GENERAL BACKGROUND

The alleged facts giving rise to the bitter and acrimonious relationship between the parties are as follows. Plaintiff Edwards is the former president of Pilot Air Freight Corporation ("Pilot"), a company which was in need of refinancing and additional outside investment in order to remain financially stable. In 1994, Richard Philips ("Philips"), Pilot's attorney at the time, secured outside investment from Defendant Wyatt and structured a refinancing of the company's banking arrangements.

Eventually, Philips and Wyatt became members of Pilot's Board of Directors and acquired rights to secure outstanding shares of the company. In addition, Philips became Pilot's chief executive officer ("CEO") while Edwards, retaining his position as director of Pilot, entered into a three-year employment agreement with the company. The relationship between the three men, however, soon disintegrated in the face of disagreements and struggle for power over the company, eventually leading to Edward's termination in 1995.

Edwards, being denied his salary and bonuses due to him under his employment agreement, petitioned for chapter 11 bankruptcy which was converted into a Chapter 7 liquidation. Early in 1998, while the bankruptcy proceedings were ongoing, Edwards and Wyatt entered into a Settlement Agreement in an attempt to resolve past differences. The two also entered into a Consulting Agreement in which Edwards was to assist Wyatt with the sale of a public offering of Pilot. In addition, Wyatt allegedly made the following three oral financial promises: (1) that he would help Edwards gain maximum value for the sale of his stock in Pilot; (2) that he would help Edwards regain monies owed to Edwards by Pilot, including past salary, bonuses, and retained earnings; and (3) that he would not enter into any agreement with Phillips to settle the bankruptcy sale proceeding without including Edwards in settlement discussions.

According to Edwards, Wyatt made these promises to "ensure that Edwards remained aligned with him and unaligned with Phillips throughout the course of the bankruptcy sale proceeding." Pl.'s Compl. ¶ 41. Wyatt valued the collaboration with Edwards because he was in the midst of a battle with Phillips for control of Pilot, a corporation which Wyatt's investment advisors believed could be worth more than $100 million. Although Edwards' Pilot stock was legally controlled by the bankruptcy trustee at this time, the trustee regularly solicited Edwards' views on actions relating to the disposition of the stock because it was well known that there was going to be a surplus estate in which the debtor would retain a significant monetary interest.

During the course of the bankruptcy sale proceeding, Wyatt and Phillips submitted competing bids for the purchase of Edwards' Pilot stock and other assets. One week before the hearing on the final sale of Edwards' Pilot stock, Wyatt told Edwards to be sure that Edwards' bankruptcy counsel expressed a preference for Wyatt's bid in order to enhance Wyatt's chance of success in purchasing Edwards' assets.

**\*2** On October 30, 1998, the day of the scheduled proceeding, Wyatt and Phillips informed the bankruptcy court that they had entered into a separate settlement agreement. They had joined together to offer a joint bid of $5,200,000.00

**Edwards v. Wyatt, Not Reported in F.Supp.2d (2001)**
2001 WL 1382503

plus settlement of all claims between Wyatt, Phillips, Pilot, and the bankruptcy estate of Edwards. Edwards was not included in settlement discussions or the final agreement.

Edwards objected to the joint bid as an illegal collusive effort to control the sale price for his assets in the bankruptcy court. On December 15, 1998, the Bankruptcy Court rejected the objection and permitted the sale of Edwards' assets controlled by the trustee. Edwards received approximately $3,000,000.00 from the sale of these assets.

On December 29, 1999, Edwards filed a complaint against Wyatt, asserting claims of breach of contract, promissory estoppel and fraudulent misrepresentation in the District Court for the District of Columbia. On January 18, 2001, the D.C. District Court, finding no personal jurisdiction over the Defendant, ordered that the case be transferred to this Court. Subsequently, on July 31, 2001, this Court denied Wyatt's Motion to Dismiss. By stipulation, Wyatt was granted a week's extension to answer the complaint by August 24, 2001. On August 24, 2001, Ira Silverstein[1] was admitted pro hac vice to this Court and took over as lead counsel for Wyatt. Along with the answer, Wyatt asserted affirmative defenses and two counterclaims against Edwards and his counsel, Stephen Braga, claiming abuse of process and intentional infliction of emotional distress.

I. DEFENDANT'S MOTION FOR EXTENSION OF TIME

A. Facts
On September 18, 2001, Plaintiff's counsel, Stephen Braga, by way of Federal Express, served on Defendant's counsel, Ira Silverstein, two items: (1) advance notification of Motion for Sanctions Under Rule 11; and (2) a copy of the Plaintiff's Motion To Dismiss Defendant's Frivolous Counterclaims, filed on September 17, 2001. No cover letter was enclosed.

Silverstein never responded to either items and missed the October 5, 2001 deadline to reply to Plaintiff's Motion to Dismiss. On October 12, 2001, Braga e-mailed Silverstein inquiring as to whether the Defendant was withdrawing his counterclaims and whether he intended to oppose the motion to dismiss. Two days later, Silverstein replied, requesting an extension to respond to Plaintiff's Motion to Dismiss. He explained that he failed to respond because he did not realize that the set of papers he received on September 18, 2001 contained two separate items. He stated that he was assuming, based on the top page of the package, that the whole package was the pre-filing notice required under Federal Rule of Civil Procedure 11(c)(1)(A).

B. Standard of Review and Discussion
*3 Courts have discretion to grant extensions where the movant shows the delay was the result of "excusable neglect." *In re Cendant Corp. Prides Lit.,* 189 F.R.D. 321, 323-324 (D.N.J.1999). Federal Rule of Civil Procedure 6(b)(2) states:

> When by these rules or by notice given thereunder ... an act is required ... to be done at or within a specified time, the court for cause shown may at any time in its discretion ... upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

In determining what constitutes excusable neglect, courts are to consider all relevant circumstances surrounding the delay. *In re Cendant Corp. Prides Lit.,* 189 F.R.D. at 324 (citing *Pioneer Invest. Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). Relevant factors include the following: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.* Other factors include: (1) whether the inadvertence reflected professional incompetence such as ignorance of the rules of procedure; (2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, and; (3) complete lack of diligence. *Id.* (citing *Dominic v. Hess Oil V.I. Corp.,* 841 F.2d 513, 517 (3d Cir.1988).

This is a clear case of neglect, but not of excusable neglect. Although Plaintiff's counsel might have clarified the situation by inserting a cover letter with the package, Defendant's counsel could not have reasonably assumed that the whole package related solely to the Rule 11 notification. The Rule 11 notification is only one page long and it clearly references the Plaintiff's Motion to Dismiss Defendant's Counterclaims. Furthermore, even if Defendant's counsel were to be believed, his actions amount to complete lack of diligence. He should have reviewed the documents sent to him. The simple act of leafing through the documents would have revealed that the Motion to Dismiss Defendant's Counterclaims was filed with this Court. The Court will not excuse such blatant lack of diligence by counsel. Therefore, the Court denies the Defendant's Motion.

Edwards v. Wyatt, Not Reported in F.Supp.2d (2001)
2001 WL 1382503

## II. PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

Having denied the Defendant's Motion For An Extension, the Court may treat Plaintiff's Motion To Dismiss as uncontested and summarily dismiss the Defendant's Counterclaims under Local Civil Rules 7.1(c). Rule 7.1(c) expressly states that in the absence of a timely response, the motion, with the exception of a summary judgment motion, may be granted as uncontested. In light of Plaintiff's Rule 11 Motion seeking sanctions against Defendant's counsel for the filing of frivolous counterclaims, however, the Court will address the merits of the counterclaims.

### A. Facts

**\*4** For the purposes of this Motion, Wyatt's assertions underlying his counterclaims will be accepted as true. First, Wyatt claims Edwards sought to terrorize him by bringing this action in a jurisdiction to which Wyatt has no connection and by including irrelevant, immaterial and scandalous allegations in the complaint. Secondly, it is alleged that Edward's counsel, Steven Braga, threatened to depose Wyatt's wife in an effort to coerce a settlement and attempted to meet with her ex parte by writing directly to her. Lastly, Wyatt complains of Edward's intent to inquire into Wyatt's net worth.

### B. Standard Of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court must determine whether the party making the claim would be entitled to relief under any set of facts that could be established in support of his or her claim. *Hishon v. King & Spalding,* 476 U.S. 69, 73 (1984) (citing *Conley,* 355 U.S. at 45-46); *see also Wisniewski v. Johns-Manville Corp.,* 759 F.2d 271, 271 (3d Cir.1985). In considering a motion to dismiss, all allegations in the complaint must be accepted as true and viewed in the light most favorable to the non-moving party. *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989) (citations omitted).

### C. Discussion

#### 1. Abuse of process

The tort of abuse of process is the improper use of legal process after it has been issued. *McGee v. Feege,* 517 Pa. 247, 255, 535 A.2d 1020 (1987). "The term 'process' has been interpreted in Pennsylvania to encompass all of the procedures incident to the litigation process, including discovery proceedings, the noticing of depositions and the issuing of subpoenas." *Pellegrino Food Products Co., Inc. v. City of Warren,* 136 F.Supp.2d 391, 407 (W.D.Pa.2000). To state a cause of action for the tort of abuse of process, the complainant must allege the following: (1) that the tortfeasor used a legal process against the complainant; (2) that the use of legal process was primarily to accomplish a purpose for which the process was not designed; and (3) that Complainant suffered harm as a result. *Hart v. O'Malley,* 436 Pa.Super. 151, 647 A.2d 542, 551 (Pa.Super.Ct.1994).

There is simply no claim for abuse of process "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Schmidheiny v. Weber,* --- F.Supp.2d ----, No. Civ.A. 01-377, 2001 WL 1172693, at \*10 (E.D.Pa. July 31, 2001) (citations omitted). "That judicial process was initiated with a bad motive is not enough; an allegation of coercive use of the process is required." *Id.* "Abuse of process usually pertains to situations involving extortion by means of attachment, execution or garnishment, and blackmail by means of an arrest or criminal prosecution." *Id.*

The only "process" here is the initial complaint and the summons requiring Wyatt to respond to the Complaint. First, Wyatt complains of Edwards' initial choice to bring this action in the District Court for the District of Columbia, a forum which was inconvenient to him. Wyatt may have suffered inconvenience but there was no abuse of any process. The initial complaint and summons were used for their intended purposes, to initiate action against Wyatt. That the D.C. district court found no personal jurisdiction over Wyatt is irrelevant. The legal process here was carried out to its authorized conclusion and the case was properly transferred to this Court.

**\*5** Similarly, there is no abuse of process where Edwards included "irrelevant, immaterial and scandalous allegations" in the ad damnum clause of the Complaint. Plaintiff is entitled to state the facts as he sees them in his Complaint, within the bounds of the law. That Wyatt felt harassed and outraged by the allegations contained in the Complaint is not relevant to the tort of abuse of process. Otherwise, every person who has ever been the subject of litigation could sue under this tort.

Edwards v. Wyatt, Not Reported in F.Supp.2d (2001)
2001 WL 1382503

Wyatt further alleges that Edwards and Braga attempted to coerce a settlement by frightening and harassing Wyatt's wife. Again, there is no legal process which is being abused. Although legal process relating to discovery, such as subpoenas, come under the abuse of process tort, here there was no such coercive legal process. Counsel merely wrote a letter seeking to gather facts. As such, the issue of marital privilege need not be addressed until and unless the Plaintiff actually seeks to compel the deposition or testimony of the wife as to the communications between herself and Wyatt.

Lastly, Wyatt complains of Edward's inquiry into his net worth. Again, there is no legal process being used here. Braga merely wrote a letter stating Plaintiff's intent to inquire into Wyatt's net worth. Even if there was some legal process being used, "when punitive damages are alleged, the weight of authority requires that a defendant disclose his financial condition in pretrial discovery *without* requiring a prima facie showing of punitive damages to justify the discovery." *Caruso v. Coleman Co.,* 157 F.R.D. 344, 348 (E.D.Pa.1994). Hence, there is no abuse of process under any set of circumstances.

2. Intentional Infliction of Emotional Distress

Pennsylvania courts follow the Restatement formulation of the tort of intentional infliction of emotional distress. *Pavlik v. Lane Limited/Tobacco Exporters Int'l,* 135 F.3d 876, 890 (3d Cir.1998). The Restatement states, "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it for such bodily harm." Restatement (Second) of Torts § 46 (West 2001). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious, and utterly intolerable in a civilized community." *Pavlik,* 135 F.3d at 890. Furthermore, a threshold requirement for this tort is an allegation of physical harm. *Hart,* 647 A.2d at 554 (citing *Kazatsky v. King David Mem'l Park,* 515 Pa. 183, 527 A.2d 988 (1987)).

Here, Wyatt has utterly failed to allege any physical injury or harm. The Counterclaim alleges only that Wyatt suffered financial harm and emotional stress. As such, although Edwards' litigation tactics are not so extreme and outrageous as to go beyond all possible bounds of decency, the Court need not discuss this point any further. The Counterclaim of intentional infliction of emotional distress will be dismissed because Defendant failed to allege physical harm.

*6 Accordingly, Plaintiff's Motion To Dismiss Defendant's Counterclaims is granted.

III. RULE 11 SANCTION

Under Federal Rule of Civil Procedure 11(c), the Court may impose appropriate sanctions on attorneys who violate Rule 11(b), which states:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

District courts retain broad discretion in determining the appropriate sanctions under Rule 11. *Langer v. Monarch Life Ins. Co.,* 966 F.2d 786, 810 (3d Cir.1992). The range of sanctions include,

> a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances. Whatever the ultimate sanction imposed, the district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose.

*Id.* "[T]he purpose of sanctions is to deter future violations, and [sic] monetary sanctions should not be more severe than those necessary to deter repeated violations of the rule." *Giangrasso v. Kittatinny Reg'l High Sch. Bd. of Educ.,* 865 F.Supp. 1133, 1141 (D.N.J.1994).

Here, as the Court ruled above, Defendant's Counterclaims are clearly baseless. As such, the Court finds it appropriate to impose Rule 11 sanctions against Defendant's counsel,

**Edwards v. Wyatt, Not Reported in F.Supp.2d (2001)**
2001 WL 1382503

Ira Silverstein. Silverstein had twenty-one days in which to withdraw the frivolous Counterclaims, yet he failed to act, even under the threat of sanctions. Related to his failure to withdraw the counterclaims is Silverstein's failure to file an answer to Plaintiff's Motion to Dismiss Defendant's Counterclaims in a timely manner.

Based on the above and the fact that this is Silverstein's first misconduct in this case, the Court will, at this time, merely admonish counsel's behavior for the record. Although Silverstein's conduct may have resulted from a complete lack of diligence rather than bad motive, the Court will not excuse such blatant lack of diligence. Silverstein is on notice that the Court may choose to impose more severe sanctions should he engage in any further misconduct in this case.

ORDER

*7 AND NOW, this day of November, 2001, in consideration of the Motion For An Extension Of Time To Respond To Plaintiff's Motion to Dismiss Defendant's Counterclaims (Doc. No. 13) filed by the Defendant, Aaron Wesley Wyatt and the Response of the Plaintiff, John Joseph Edwards, thereto and the Motion to Dismiss Defendant's Counterclaims (Doc. No. 12) filed by Plaintiff, John Joseph Edwards, it is ORDERED:

1. Defendant's Motion For Extension Of Time To Respond to Plaintiff's Motion To Dismiss Defendant's Counterclaims is DENIED.

2. Plaintiff's Motion To Dismiss Defendant's Counterclaims is GRANTED.

3. Plaintiff's Motion For Rule 11 Sanctions against Ira Silverstein, Esq., Defendant's counsel, is GRANTED. Ira Silverstein, Esq., is ADMONISHED that he has violated Federal Rule of Civil Procedure 11(b) and that any future violations may result in further sanctions.

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 1382503

Footnotes

1   Ira Silverstein was Wyatt's counsel during the time the parties were negotiating the bankruptcy situation and was allegedly deeply involved in the negotiations and meetings between the parties which eventually led to the filing of this lawsuit.

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.